## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JUNE SUMNER WARE          :
     Plaintiff,              :
                           :      **No. 3:20-CV-00693 (VLB)**
     v.                    :
                           :
**STATE OF CONNECTICUT**     :      **July 23, 2021**
     **Defendant.**           :
                           :
                           :
                           :

## MEMORANDUM OF DECISION AND ORDER DENYING PLAINTIFF'S MOTIONS FOR RECONSIDERATION, [DKTS. 14, 17-18]

Before the Court is Plaintiff June Sumner Ware's motions for reconsideration of the Court's December 14, 2020 order [Dkt. 12] dismissing Plaintiff's *pro se* complaint pursuant to 28 U.S.C. § 1915(e)(2)(b)(ii)-(iii) for failure to state a claim and for lack of subject matter jurisdiction. [Dkts. 14, 17-18 (Pl. Mots. for Recons.)] For reasons set forth herein, the Court DENIES Plaintiff's motion for reconsideration.

## Background

The allegations in the complaint are assumed to be true and are construed liberally and in a light most favorable to Plaintiff. In May 2020, Plaintiff filed a *pro se* complaint against the State of Connecticut and state officials related to intertwined criminal and child custody cases. To summarize, in June 2014, Plaintiff's children were adjudicated neglected and committed to the Department of Children and Families ("DCF") following Plaintiff's criminal conviction on charges of Criminal Attempt to Commit Assault in the Second Degree. [Dkt. 1

1

(Compl.) at 12]. Her parental rights were terminated on August 8, 2016. [*Id*. at 10]. On August 26, 2016, Attorney James Hardy filed a notice of appeal on Plaintiff's behalf. [*Id*.]. The appeal was rejected because Attorney Hardy did not pay the filing fee, although the option to pay the fee was unavailable because of a technical problem with the court's e-filing system. [*Id*.]. Attorney Hardy successfully re-filed the appeal, but the Appellate Court granted the Attorney General's motion to dismiss the appeal and denied Attorney Hardy's motion to file a late appeal of that decision in December 2016. [*Id*. at 10-11]. Thereafter, a permanency hearing was held on April 6, 2017, after which Plaintiff's children were adopted by non-relative DCF certified foster parents. [*Id*. at 11].

Earlier, while the appeal was pending in September 2016, Plaintiff was arrested and charged with Harassment in the Second Degree based on alleged threatening emails that Plaintiff sent to two DCF social workers. [*Id*. at 11]. Plaintiff alleged that she was convicted of the charge "based on a testimony that is offensive, derogatory, and omits substantive evidence and the findings of credibility of both factual information and identifiable witnesses." [*Id*. at 13]

Plaintiff is "an outspoken critic of some of the policies of the judicial system related to gross human rights violations and unconstitutional of said practices and customs. For doing so she was maliciously prosecuted -not once, but twice- by state officials who disliked her personally." [*Id*. at 14]. She alleged that Lisa Butler, one of the DCF social workers who received Plaintiff's allegedly threatening email, "attempt[ed] to undermine the plaintiff's mental health [and] is an example of government gang stalking." [*Id*.].

2

The complaint alleged deprivation of Plaintiff's civil rights in violation of 42 U.S.C. § 1983 and 18 U.S.C. § 242 arising from the Appellate Court's ruling dismissing Plaintiff's appeal of the termination of her parental rights. [*Id.* at 14-15].

Next, the complaint alleged violation of 18 U.S.C. § 241 based on collusion between Plaintiff's probation officer and the state police, who conspired with DCF and the State's Attorney to retaliate against Plaintiff. [*Id.*].

Next, Plaintiff alleged that the judges who presided over the proceeding to terminate her parental rights were negligent because they failed to undertake efforts to reunite the family and in considering evidence that should have been excluded in violation of 28 U.S.C. § 351. [*Id.* at 15-16].

Plaintiff alleged violation of 18 U.S.C. § 1584 based on allegations that she was sold into involuntary servitude because the state prosecutor, Attorney Benjamin Zivyon, recommended a competency evaluation as a condition of visitation without any evidence that Plaintiff was of unsound mind and she was deprived of pre-trial procedural rights. [*Id.* at 16-17].

Next, Plaintiff alleged that her civil rights guaranteed by the First, Fourth, and Fourteenth Amendments to the U.S. Constitution, as enforced through the Civil Rights Act of 1871, were violated by the timing and form of the Petition of Neglect and an Order of Temporary Custody that initially removed Plaintiff's children from her care. [*Id.* at 17].

Finally, Plaintiff alleged violation of 18 U.S.C. § 1621, 18 U.S.C. § 1623, and 18 U.S.C. § 371, all provisions of the federal criminal code, because court officials

made false statements on the record about Plaintiff's identity. Plaintiff claims that "judges and court officers have derived substantial revenue from the act of infringing on a private citizen." [*Id.* at 17].

Plaintiff requested three remedies. First, Plaintiff requested equitable relief in the form of the protection of personal information including, but "not limited to, legal name, social security number, driver's license number, state identification card number, bank account number, credit or debit card number, passport or alien registration number, or health insurance identification number, birth dates, location of property (s), travels, new address private and confidential from government corporate spying. And make it a criminal act to uncover, disclose, or investigate the same." [*Id.* at 18].

Second, Plaintiff requested an injunction which both orders "a full investigation into the trial for termination of parental rights for reconsideration if the decision was improper. The reversal of the judgement for termination of plaintiff's parental rights and the reunification of family." [*Id.*]. Plaintiff also requested specific performance in allowing the review of the claim and an order which reverses "the finding of substantiation and the order that he be listed on the Central Registry, or such other proper order […] and grant full pardon with the expungement of reports of neglect and abuse that have been investigated and substantiated [as well as the] expungement of all criminal history pertaining to Harassment 2nd degree and Failure to Appear [as well as the DCF facilitating] an independent assessment of the both children." [*Id.*].

4

Third, Plaintiff requested "restitution-punitive damages for damages due to pain and suffering, emotional distress, damage to reputation, for all the time wasted and defamation of character. Money damages as a result from fines for violations under the titles listed above and contempt of the Notice of Trust enumerated in the Fee Schedule Appendix A of the Private Revocable Trust of June Sumner Ware El Bey." [*Id.* at 19].

The Court dismissed Plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2)(b) in a memorandum of decision dated December 14, 2020. [Dkt. 12 (Mem. of Decision)].

The Court first considered Plaintiff's malicious prosecution claim which was misstyled as a claim under the federal criminal code. [*Id.* at 8-12]. Plaintiff alleged violation of six federal criminal statutes, but only 18 U.S.C. § 1584 is recognized as providing a private right of action, which exists for victims of involuntary servitude. [*Id.* at. 8-9]. Plaintiff failed to plausibly allege how a court ordered psychological evaluation or interference with her right to self-representation during a criminal proceeding amounts to forced labor. [*Id.* at 9](citing *United States v. Kozminski*, 487 U.S. 931, 952 (1988)).

Based on her allegations and in construing the complaint liberally, the Court considered the substance of Plaintiff's malicious prosecution claims under 42 U.S.C. § 1983. [*Id.* at 10-12]. The Court held that Plaintiff failed to state a claim for malicious prosecution because Plaintiff did not (and could not) allege a favorable termination as required by *Heck v. Humphrey*, 512 U.S. 477 (1994) and its progeny.

[*Id.*]. Under *Heck*, if a determination favorable to the plaintiff in a § 1983 action "would necessarily imply the invalidity of [her] conviction or sentence," then the plaintiff must prove that the conviction or sentence has been reversed on direct appeal or declared invalid before she can recover any damages. 512 U.S. at 486-87. *Heck*'s favorable termination rule also applies to actions seeking equitable remedies. *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005)

In the absence of any allegations concerning the disposition of the 2014 criminal harassment charge against her, the Court reviewed the docket corresponding to the Connecticut Superior Court case number listed by Plaintiff in her complaint. [Mem. of Decision at 12]. The docket shows that she was convicted of violation of Conn. Gen. Stat § 53a-183 on January 10, 2020 and sentenced to 90 Days Jail, Execution Suspended, Conditional Discharge 1 Year for Harassment in the Second Degree. [*Id.* at 12](citing *State v. June S. Ware*, No. H14H-CR16-0134644-T, (Conn. Super. Ct. Jan. 10, 2020)).

The Court then considered Plaintiff's allegations arising from the termination of her parental rights and determined that it lacked subject matter jurisdiction over the claims. [Mem. of Decision at 12-15]. Specifically, the exercise of federal jurisdiction over Plaintiff's claims arising from the termination of her parental rights was prohibited by the *Rooker-Feldman* doctrine because it was a de facto appeal of the state court's decision. [*Id.*](citing *Phifer v. City of New York*, 289 F.3d 49, 57 (2d Cir. 2002)(holding that a mother's § 1983 claim that functionally challenged the family court's determination of custody, neglect, and visitation was

barred by the *Rooker-Feldman* doctrine because plaintiff sought to re-gain custody that was terminated by the state court).

Additionally, the Court held that Plaintiff's claim against the State of Connecticut was jurisdictionally barred by the Eleventh Amendment to the U.S. Constitution. [*Id.* at 15] (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985)). Similarly, the individual defendants were only named in their official capacities. Therefore, they were also immune from money damages pursuant to the Eleventh Amendment. [*Id.*].[1] The injunctive relief Plaintiff sought was primarily retrospective and would not remedy a future violation of federal law. *Green v. Mansour*, 474 U.S. 64, 73 (1985). To the extent Plaintiff sought prospective equitable relief, it was limited to a request for an order protecting her personally identifiable information. [*Id.* at 16]. However, Plaintiff failed to allege any facts for the court to ascertain the basis for a legal injury arising from unauthorized access or distribution of information protected by federal law or a nexus between the relief sought and the claims alleged. [*Id.*].

For these reasons, the Court granted Plaintiff's motion to proceed *in forma pauperis* but dismissed the complaint pursuant to 28 U.S.C. § 1915(e)(2)(b).

Plaintiff then filed a motion for reconsideration on January 12, 2021. [Dkt. 14] The motion was not signed by Plaintiff as a self-represented party as required by

---

[1] The Court also noted that Plaintiff alleged that the state judges who presided over her cases were negligent. Plaintiff did not name any state judges as parties to the suit. Even if she had, they are absolutely immune for suits for money damages for their judicial actions. [*Id.* at 16-17] (citing *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009)).

Fed. R. Civ. P. 11(a). The Court provided Plaintiff with the opportunity to cure her filing. [Dkt. 16]. Plaintiff then filed two motions titled "Motion to Reargue Pursuant to 42 U.S.C. § 1983," which the Court construes as motions for reconsideration pursuant to Local Rule 7(c). [Dkts. 17-18]. The pleadings are identical to Plaintiff's unsigned motion, except that they are signed. The latter also includes a copy of an outline of a legal argument titled "Statutory Factors: CLOSING REMARKS WITH CONNECTICUT STATE GENERAL STATUTE 46B-55(C)(2011)" and a copy of Chief Judge Underhill's decision granting reciprocal attorney discipline in *In Re Josephine Smalls Miller*, 18-gp-35 (SRU).

### Legal Standard

In the Second Circuit, the standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see* D. Conn. L. R. 7(c) (requiring the movant to file along with the motion for reconsideration "a memorandum setting forth concisely the controlling decisions or data the movant believes the Court overlooked").

There are three grounds for granting a motion for reconsideration: (1) "intervening change of controlling law"; (2) "the availability of new evidence"; or (3) a "need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, *Fed. Practice & Procedure*, § 4478 at 790). If the

8

Court "overlooked controlling decisions or factual matters that were put before it on the underlying motion," reconsideration is appropriate. *Eisemann v. Greene*, 204 F.3d 393, 395 (2d Cir. 2000) (per curium).  However, a motion for reconsideration should be denied when the movant "seeks solely to relitigate an issue already decided."  *Shrader*, 70 F.3d at 257; *Patterson v. Bannish*, No. 3:10-cv-1481 (AWT), 2011 WL 2518749, at *1 (D. Conn. June 23, 2011) (same).

## Analysis

As discussed above, Plaintiff's complaint essentially alleged two claims: first, that she was maliciously prosecuted in 2016 in retaliation for appealing the termination of her parental rights, and, second, that she was deprived of her parental rights without due process because of procedural errors or irregularities in the child custody proceedings. Plaintiff's motion for reconsideration only addresses her second claim.

Plaintiff seeks reconsideration on the grounds that the Court's decision dismissing her complaint "appears to be in direct contravention of Title 18 section 242 (1) decision issued by the U.S. Supreme Court (*State v. Mobley*, 240 N.C. 476, 83 S.E. 2D 100)(1954), 42 U.S.C. § 1983, and the court ruling overlooked objective facts." [Dkt. 18 at 1]. Plaintiff argues that her complaint "was essentially an appeal action in which the plaintiff, JUNE SUMNER WARE, sought to address alleged inconsistencies in the trial court's memorandum of decision as well as claims of law that the [movant] claimed were not addressed by the Connecticut Appellate court." [*Id.* at 2](capitalization and brackets in original). The Court agrees that

9

Plaintiff's complaint is "essentially an appeal action," which is why the Court's jurisdiction over this matter is precluded by the *Rooker-Feldman* doctrine.

As an initial premise, the Court agrees that parents have a fundamental right to make "decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000). Although a parent's custody rights are fundamental, they are not limitless. *See In re Davonta V.*, 285 Conn. 483, 487, 940 A.2d 733, 736 (2008)(summarizing the procedural steps for non-voluntary termination of parental rights in Connecticut). Domestic relations matters, including child custody determinations, are adjudicated by state courts. *In re Burrus*, 136 U.S. 586, 593–94 (1890)("[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States.").

Federal courts have limited subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). For subject matter jurisdiction to exist, the federal court must be granted the authority to preside over the "case or controversy" by the U.S. Constitution or by federal statute. *Id.* There are also exceptions to a federal court's exercise of subject matter jurisdiction, including the domestic relations exception and the *Rooker-Feldman* doctrine.

The domestic relations exception ". . . divests the federal courts of power to issue divorce, alimony and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). Among other concerns, the rule is premised on " . . .state courts [being]  more eminently suited to work of this type than are federal courts,

which lack the close association with state and local government organizations dedicated to handling issues that arise out of conflicts over divorce, alimony, and child custody decrees." *Id.* at 704. Although the complaint is styled as alleging a violation of Plaintiff's constitutional rights and the federal criminal code, the Court lacks the jurisdiction to enter the child custody orders that Plaintiff seeks. *See Rabinowitz v. New York*, 329 F. Supp. 2d 373, 376 (E.D.N.Y. 2004)("Federal courts will dismiss actions aimed at changing the results of domestic proceedings, including orders of child custody."); *Mitchell-Angel v. Cronin*, 101 F.3d 108 (2d Cir. 1996)(same).

Relatedly, the *Rooker-Feldman* doctrine precludes lower federal courts' exercise of jurisdiction over cases which are essentially appeals from state court judgments. *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005). The doctrine exists because the federal district court "has no authority to review final judgments of a state court in judicial proceedings." *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983). "To do so would be an exercise of appellate jurisdiction," which only the U.S. Supreme Court possesses over state-court judgments insofar as they raise a federal issue. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923).

The doctrine is limited to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). There are four requirements for the application of the *Rooker-Feldman*

doctrine: (1) the party raising the claim must have lost in state court; (2) that party's injuries must be caused by the state court judgment; (3) that party's claims must invite the district court to review and reject the state court judgment; and (4) the state court judgment must have been rendered prior to the commencement of the federal court proceedings. *See Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014); *Hoblock*, 422 F.3d at 85 (interpreting the requirements set forth by *Exxon Mobil Corp.* as a four-factor test).

Here, the Court found that all four requirements of the *Rooker-Feldman* doctrine were met. Plaintiff is the state court loser, as she sought custody of her children but her parental rights were terminated. Plaintiff's alleged injuries are caused by the state court judgment-an issue made clear by the equitable relief she seeks. Plaintiff's claim invites the Court to review and reject the state court judgment. The judgment is final, and Plaintiff's appeal was dismissed. Therefore, the Court could not exercise jurisdiction over Plaintiff's domestic relations claim.

On reconsideration, Plaintiff does not address the application of the four-factor test but instead concedes that her complaint is "essentially an appeal action." [Mot. for Recons. at 2]. Plaintiff clarifies that "it was always plaintiff's position that the trial judge, Marcia Gleeson, had erred in her finding and the inadequacy of her reasoning for reaching the decision [terminating plaintiff's parental rights]." [*Id.*].

Plaintiff exercised her appeal rights but was unsuccessful because her attorney failed to pay the filing fee and the Appellate Court denied his motion to file

a late appeal. [*Id.* at 2-3]. Plaintiff argues that the Appellate Court erred in dismissing her appeal and denying Attorney Hardy's motion under Conn. Practice Book § 11-11 and *Jackson v. Jackson*, AC 38858 (Conn. App. Nov. 1, 2016). [*Id.* at 3-5]. She argues that the decision "…continue[s] to deny the [Plaintiff] the opportunity to seek review on appeal of the trial court decision to terminate her parental rights." [*Id.* at 4]. She argues that the issues now before this Court are as follows:

> (a) Did the Connecticut Appellate court abuse its power and/ or discretion in denying Plaintiffs motion to appeal the termination of parental rights?
>
> (b) Did the trial judge err in law by the issuance of a termination of parental rights?
>
> (c) Did the State's attorney abuse its judicial power in committing the children to the State and not to biological relatives?

[*Id.*]

> As to remedies, Plaintiff argues that:

> . . . [her] only remedy in this case, it appears, would be an action under 42 U.S.C. § 1983 for deprivation of rights against the State of Connecticut/ Appellate Court to invite this district court review and rejection of the Family Court's order of disposition and recover the two children which she claims she should have been reunited.

[*Id.* at 5]

These arguments make plain that Plaintiff's legal injuries were caused by the state court's adverse final judgment and she seeks an order from the federal court reversing that decision. To put a finer point on it, Plaintiff's arguments about the merits of the trial court's or Appellate Court's decisions have no bearing on whether the Court has subject matter jurisdiction over the action. This Court renders no opinion about the merits of the custody decision or whether the

dismissal of Plaintiff's appeal was in error. To do so would constitute consideration of a de facto appeal prohibited by *Rooker-Feldman*.

The Court also reviewed the legal authority cited in Plaintiff's motion. *State v. Mobley*, 240 N.C. 476, 83 S.E. 2D 100 (1954) is a North Carolina Supreme Court case reversing a criminal conviction for resisting arrest. There, applying North Carolina law, the court held that the state failed to make a prima facie showing of probable cause for a warrantless arrest on charges of public drunkenness. *Id.* at 485. Since there was no evidence showing that the defendant used excessive force in resisting the unlawful arrest, dismissal of the resisting arrest charges was required. *Id.* Plaintiff does not cite *Mobley* for a specific proposition of law and the case is not germane to any issue in Plaintiff's action. *Mobley* does not constitute a controlling decision overlooked by the Court as required by the reconsideration standard. *Shrader v. CSX Transp., Inc.*, 70 F.3d at 257.

In addition to *Mobley*, Plaintiff also makes passing reference to 18 U.S.C. § 242. Section 242 makes it a crime for a person, acting "under color of any law," to "willfully" deprive an individual of "any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States." 18 U.S.C. § 242. As the Court held previously, Section 242 does not provide a private right of action. *See Hill v. Didio*, 191 F. App'x 13, 14 (2d Cir. 2006)(holding that 18 U.S.C. §§ 241, 242 does not provide a private right of action); *see also Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994)(same). Plaintiff does not cite any controlling authority on this issue.

14

Plaintiff also attached what appears to be an outline of a legal argument for Plaintiff's child custody case. For reasons discussed above, the adjudication of Plaintiff's custodial rights cannot be addressed by the Court.

Finally, the relevance of the attorney disciplinary decision attached to Plaintiff's third motion is not readily apparent. According to the complaint, Plaintiff and Attorney Josephine Miller entered an attorney-client relationship. [Compl. at 11]. Attorney Miller is not a party to this action and there are no allegations related to her in the complaint. Attorney Miller's suspension by the Connecticut state courts in 2018 and reciprocal discipline imposed by this District is not germane to the issues that warranted dismissal of Plaintiff's complaint. Consequently, it does not constitute controlling data overlooked by the Court as required by the reconsideration standard.

## Conclusion

For the above stated reasons, the Court DENIES Plaintiff's motions for reconsideration.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge


Dated at Hartford, Connecticut: July 23, 2021